Richard J. Shermah, J.
Trial was held at a Trial Term of the Saratoga County Court on June 30,1958. The brief on behalf of the plaintiff has been received only recently.
On or about November 5, 1954, the defendant, Olga Kracko, entered into a contract in writing with the plaintiff, Walter J. Clothier, for the construction on premises owned by defendants, Walter and Pauline Swidunovich. The contract price was $14,000 to be paid $4,000 down and the balance in four payments of $2,500 each. The project was to be completed and ready for occupancy by the end of May, 1955. The contract was drawn by the plaintiff and the defendant Kracko. Some difficulties apparently arose between the parties in January and/or February of 1955, and on February 21, 1955, a supplemental agreement was drawn by Mr. Charles L. Hoey, attorney for the defendants, and executed by the parties. The sum of $11,500 has been paid on account of the contract, leaving, with certain adjustments, a balance due of $2,405. Plaintiff also claims that extras were furnished, and demands judgment for $2,951.
The defendants, answering the complaint herein admitted the written agreements, denied that the work was fully performed and that the work was performed in a poor, unsatisfactory and unworkmanlike manner, alleged a breach of the agreement; that it was necessary for defendants to have all heating, air conditioning, plumbing and other items done over or completed by other workmen; that rentals were lost; and further that it became necessary to hire other persons to complete or correct the work. The defendants demanded judgment against the *922 plaintiff dismissing the complaint and that defendants have judgment against the plaintiff for the sum of $9,000.
Subsequently plaintiff demanded a bill of particulars from the defendants, and later a motion was made to that effect, whereupon this court granted an order of preclusion unless the defendants served, a bill of particulars within 15 days.
A notice of mechanic’s lien was filed in the Saratoga County Clerk’s office on or about the 12th day of September, 1955.
Inasmuch as this court is following a strict construction of the contract and the supplemental agreement, they are set forth herewith.
CONmAOT
10-Room Motel
1 — Foundation 6 ft. in depth concrete — cellar ventilated by small windows.
2 — 8" concrete blocks to be used for foundation.
3 — Insulation partition between units.
4 —■ 2-double hung windows, one in rear of bedroom and one in bathroom.
5 — Picture windows to be installed by contractor and bought by owner.
6 —• Aged native lumber to be used.
7—-Floors to be made of Pine or Spruce or other suitable material sanded smooth and varnished.
8 — Built-in wall closets with 2 shelves and pole for hangers.
9 — Built-in shower stalls with plastic tile covered full height of shower stall.
Additional 4 ft. plastic tile round the rest of the bathroom. Colors of tile to be chosen.
10— -White wash sinks with chrome faucets. White toilet bowls and recessed
soap, glass paper spaces.
11— -Bathrooms to have tiled floors (cemented asphalt).
12 — Size of overall unit (12 x 14).
Size of finished unit (IF 8" x 13? 8").
13 —- Combination oil heating unit with air conditioning, guaranteed.
14 — Heating fixtures to be in base board. °
15 — Complete copper plumbing connected and installed.
16 — One ceiling light with wall switch per room.
One bathroom light with outlet and wall switch.
2 double outlets to a room. One outlet and switch outside the two doors overhead. Fixtures to be attached.
17-—-Sheet-rock for inside finish of rooms in different colors, painted by contractor. All joints to be taped and smooth finished.
18 — Solid birch doors with locks built in each handle.
19 — 3 ft. overhanging roof.
20 — 3 ft. concrete walk in front of motel.
21 ■—- Chimney made of blocks with tile pipe inside, and capped on top with bricks.
22 — 2 Hot-water tanks 80 gal. each.
23 — 2 Septic tanks (500 gal.) each.
24 — Water pump to be wired and connected.
25 — Windows size to be 53% x 38%.
26 — Roofing to be 3 in one shingles, color to be chosen.
27 — Graded ground of frontage of Motel and slate covered for solidness.
28 — Five circlets on Motel front.
29—-All foundation to be water proofed.
*923 30 — Metal eave drips shall be provided.
31 —. Roof shall be water-tight at completion. Saturated felt to be used as flux
for all metal valleys.
32 — All pipes passing through the roof shall be flashed and counter flashed.
Counter flashing shall be caulked into the hubs or held with brass clamps embedded in elastic or white lead.
33- —-Job shall be guaranteed for at least (1 yr.).
34— Job must be completed and ready for rental by the end of May, 1955.
35 —■ Tapestery colored brick to be used on front.
Common red brick to be used on rear and sides of building.
36—Under this guarantee the contractor shall repair or replace which may become defective or due to poor workmanship within that time. This guarantee shall accompany the request for Anal payment.
TOTAL ERICE AGREED-..............$14000.00
Nov. 1st, 1954.................... 4000.00 Down Payment Ree’d. WJC
2nd Payment Dee. 17,1954 ........ 2500.00 1st Payment Ree’d. WJC
2500.00 2nd Payment
2500.00 3rd Payment
2500.00 4th Payment
Allowance of $1-60.00 Dollars on windows purchased by owner.
signed Walter J. Clothier
signed Olga Kracko
Finished floor $600.00 extra.
whereas, on or about November 5,1954, olga kracko- and Walter j. clothier entered into a contract for the erection by Clothier of a 10-room motel according to specifications contained in said contract;
it is hereby agreed that the contract, from this time on, shall be modified as follows:
A payment of $2600.00 on account of the cost of said building shall be made at this time.
Clothier agrees that he will proceed with the installation of tile floors in said building, and a payment of $975.00 shall be made at the time the tile floors are completed. The tile to be installed shall be in colors selected by Kracko, to be in Grades B and C, and the paints to be applied shall be selected by Kracko to harmonize with the tile.
it is further agreed that if Clothier shall connect the heater, Kracko shall furnish the oil necessary to heat the building during the installation of said tile floors.
The construction of the building shall be complete not later than May 15,1955.
Upon the completion of the work in accordance with the terms of the contract, as herein modified, Kracko shall pay to Clothier the sum of $2500.00, less a net allowance to Kracko for windows of $95.00 and Kracko agrees to complete the glazing of the windows.
The brick to be installed on the front of the building is to be what is known as “ Bennington Range ” to obtain an effect generally similar to that in the exterior walls of St. Peter’s Church in Saratoga Springs, and Clothier agrees to paint the exterior trim.
Dated: February 21, 1955.
Olga Kracko
Walter J. Clothier
*924 The defendants lay great stress on the statement contained in the original contract to the effect — “ This guarantee shall accompany the request for final payment.”
The defendants also contend that upon taking possession and for at least one year thereafter, they became aware of certain defects running through the whole project including defects in the plumbing, heating and air conditioning; and the construction of the building, interior and exterior.
It was most difficult to ascertain all of the facts with respect to each item of the original agreement and the supplemental agreement.
The testimony in many instances referred to oral changes in the contract and where there were such changes made orally to alter the terms of the written agreement, such changes are being disallowed. For example, in the testimony of Olga Kracko “ the windows wouldn’t move up or down and the size of the windows, were much smaller than we had talked because we failed to write that down so I found out later I couldn’t hold him to it ”.
The sole question as this court views the matter is whether or not there has been a substantial performance of the contract. The electrical work was installed and a certificate furnished.
The plumbing and heating was established in conformity with the contract. The septic tank was furnished accordingly. Nowhere does it appear that Winter heat was to be furnished. Assuming that the plumbing and heating was insufficient for the needs of the defendants, then there was some duty on the part of the defendants to have these items checked, and alterations in writing agreed upon.
This court is impressed by the testimony of Olga Kracko appearing on page 60 wherein she states: “ Well, the size we had discussed in the beginning it should be able to accommodate two large beds in each room. I can’t put two. large beds in each room, there isn’t enough room for two.”
During the trial, every effort was made by the court to determine whether or not the plaintiff had met the plans and specifications. If there was a guarantee in connection with the work to be furnished by the plaintiff, there being no other language involved, it can only mean good performance to meet the plans and specifications. It appears from the testimony that the manufacturer of the heating unit only guaranteed the heating unit against defects in the furnace, and there were no defects in the unit. It was too small. The same is true of the air conditioner.
The contract was loosely drawn. According to the proof, there was a substantial compliance with the terms of the contract, *925 except for minor details such as fixing the toilets and repairing the tile work. Some reference was made to a City Code, not applicable in this instance.
Section 3 of the Lien Law provides as follows: “ A contractor, subcontractor, laborer, materialman * * * who performs labor or furnishes materials for the improvement of real property * * * at the request of the owner thereof, * • * * shall have a lien for the principal and interest of the value, of the agreed price, of such labor or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this chapter. ’ ’
The court has read with interest the various cases cited by the attorneys for the respective parties. In Glacius v. Black (50 N. Y. 145, 148) the court said: “It it well settled in this State that where a party has entered into a contract to perform work and furnish materials of a specified character, and the other party agrees to pay for the same upon the performance of the contract, although the work may be performed and the materials furnished, yet, if not done in the manner stipulated, no action will lie for compensation. When performance is a cerfíáition of payment the former must be shown to entitle a party to recover unless it has been waived or released. ’ ’
To distinguish this case from the above-cited case it is to note the language: “ to perform work and furnish materials of a specified character” and “yet, if not done in the manner stipulated ’ ’. In every instance the test is whether or not there has been a substantial compliance with the terms of the contract. This proof has been met.
In disallowing extras, and allowing for repairs of defects in the sum of $350; this court grants judgment to the plaintiff in the sum of $2,050. Submit order.